Case number 321-0431, Sarah Herron, Administrator of the Estate of Donald Herron, Deceased Appellant v. Iowa Health System and Methodist Medical Center, et al., Appelese. Thank you. Good morning, everyone. Mr. Gallagher, if you're ready, you may proceed. Good morning, Justices. May it please the Court and Counsel, Mr. Drinkwine. Thirty years ago this month, the Illinois Legislature passed the Mental Health and Developmental Disabilities Confidentiality Act. As the Legislature and this Court have emphasized over the past 30 years, the purpose of this Act is to preserve the confidentiality of records and communications of persons that have received mental health services, and the Plaintiff is respectfully asking this Court to once again take up that important task. As outlaid in our brief, the Court erred in three different separate ways by failing to satisfy any of the three requirements laid out by the Act. First, the trial court failed to affirmatively find that the parties, namely the decedent, placed his mental health condition as an element of the claim. The trial court also failed to establish that or conduct in-camera inspection. Finally, the trial court failed to make a finding that any of these records were relevant, probative, or not unduly prejudicial. The trial court's failure to do any of these steps was violated over the Act, and in and of itself would warrant reversal. I want to briefly touch on the issue of waiver as I laid out in my brief. The defendants have waived or forfeited the argument on appeal by failing to raise it in the trial court, and the lower court defendants never claimed that plaintiffs affirmatively placed the decedent's mental health at issue. In fact, the defendants didn't even reference the plaintiff's argument that the plaintiff's complaint seeking damages under the survival claim and the reference to, quote, mental anguish and emotional distress in and of itself affirmatively placed the decedent's mental health at issue. Therefore, we'd argue that the defendants have forfeited that argument. I did not reference this in the brief. However, there's a First District 2016 decision dealing with the Mental Health Act dealing with forfeiture titled Thompson v. NJ, and within that, the First District found that the party did waive the issue by not raising it in the trial court. Waiver aside, defendants have failed to cite any case establishing that plaintiffs can claim for affirmatively placed the decedent's mental health condition as an element of the claim. All the cases cited by defendants in support, including this court's decision in Pfeiffer, and I acknowledge that it's controlling, include additional measures taken by the plaintiff to place the individual's mental health at issue. Now, Pfeiffer, yes, the court did rely in part on the fact that the plaintiff said that they were seeking damages for body and mind. However, the court clearly emphasized that the plaintiff also, quote, affirmatively stated she was claiming psychiatric, psychological, and emotional injuries as a result of the occurrence in response to interrogatories regarding whether or not they were seeking mental health damages. Moreover, the plaintiff listed the individual's licensed clinical social worker and neuropsychologist as treating physicians in their up to disclosures. They disclosed them at deposition. At their deposition, these two individuals talked about the fact that the plaintiff received mental health treatment as a result of the accident and her injuries. Based on all these is a culmination of those three things, the complaint in very small part, the answers to interrogatories, disclosure of mental health professionals, and then these mental health professionals actually providing opinion testimony that she or her mental health injuries were a result of the accident. I honestly don't know how the plaintiff could argue that they didn't open the door. We've done none of those things. I also wanted to reference the fact and emphasize section 10A1 of the act. As the court is well aware, section 10A1 provides support for the argument that the mere pleading of mental anguish and emotional distress alone is not sufficient to open the door. It states, and if the court will allow me, quote, in any action in which pain and suffering is an element of the claim, the plaintiff shall not be deemed to be introduced merely by making such a claim and shall be deemed to be introduced only if the recipient or a witness on his or her behalf first testifies concerning the record or communication. Would you repeat that? You're kind of Mr. Gallagher. You're not enunciating well. I apologize, Your Honor. Would you please repeat what you said? Yes, Your Honor. In any action in which pain and suffering is an element of the claim, mental condition shall not be deemed to be introduced merely by making such a claim and shall be deemed to be introduced only if the recipient or a witness on his or her behalf first testifies concerning the record or communication. As I stated that in this case, there is no disclosure of witnesses regarding Donnie's mental health treatment. There is no testimony regarding his previous mental health treatment or testimony that the negligence alleged by the defendants exacerbated or worsened his mental health or that he received additional mental health treatment as a result of their negligence. This case is strictly about the two hours. When you're talking about testimony, Mr. Gallagher, we're not at trial yet, are we? We are not, Your Honor. Okay, so where is this testimony derived from? Well, I'm thinking when they reference testimony, also deposition transcripts like the Fifer Court relied on, namely the licensed clinical social worker and the neuropsychologist's deposition testimony where they explicitly talked about, yes, we gave her this treatment. Yes, this treatment was a result of the injuries that she suffered from this accident and ultimately they're going to claim that at trial. We're not doing those things. Our case is really just two hours of time period at the emergency department and whether or not they adequately responded to his overdose and his drop in blood pressure, whether they put the medication forward that they're supposed to, whether they called the code in time, whether the code was initiated properly, and ultimately we're alleging because they have... Your theory basically is none of this is relevant because you have put the fence around a particular clear issue of whether treatment, regardless of how the condition was created by your client, that there's a standard of care that was breached. Yes, Your Honor, and if I could unwind the clock and remove mental anguish and emotional distress from the complaint, I would. I know the court has taken this court and other courts because I'm bound by what I'm saying here. I'm saying we're not looking for any type of mental health damages in any way, shape or form. We are not. That's the reason why I didn't disclose any of his mental health That's why I did not provide any testimony of the like because I never intended to seek that. I never intended to open the door. I never intended to waive that privilege that this court has upheld for 30 years. And more importantly, and not more importantly, in addition to... I have a question. This is a civil case that just grinds on and grinds on because of discovery and depositions. Isn't this really something for relevancy determination by the trial court in the trial? Well, Your Honor, I think the Supreme Court's decision in D.C. talked about relevancy is not a reason to then waive the privilege. The quote from D.C. is, quote, relevancy and centrality, however, are not decisive of whether a recipient has introduced such conditions as an element of his or her claim or defense under Section 10A1. And I say that to say this is that there has to be an affirmative finding by the trial court that we have introduced this. You cannot introduce it through the defendant's quote-unquote theory of the case. Again, a line from the Supreme Court's decision in Rita. Yes, and Rita addressed the fact that there was loss of consortium claim and they said, well, what if the relationship between the wife and husband isn't great? You know, shouldn't his mental health treatment come into play? Rita threw that aside and said, again, you have to affirmatively introduce it as a party in order to then waive it after the court does an in-camera, after the court does the weighing task, whether it's relevant or overly prejudicial and the like. And I was not careful enough, I will acknowledge you, but there's a reason why I didn't disclose any of those things in my answers interrogatories and my F2 disclosures and I don't intend to disclose them at any point in time. And the reason why the legislature put in 10A1 is to carve out that for someone like me, that I can still allege, you know, physical pain and mental suffering as detailed in the wrongful death jury instructions. As you all know, this annex of Kinn's grief and sorrow or annex of Kinn's mental suffering, I would submit to the court that this mental suffering that's referenced in the series 31 instructions is the same type of mental anguish I was referencing in my survival claim. But again, I assure the court that I am not seeking any type of damages for mental health. What's our standard of review here in this case? It's de novo, your honor. It's de novo. Okay. Yeah, it's de novo. Because it's a motion to compel and then I was held in contempt of court as a result of this. And I acknowledge and I'll say, you know, much of my response is as far as the rebuttal is concerned for rebuttal. The they did touch briefly on fundamental fairness doctrine justices. And I think it was one or two sentences and their response brief. Again, the DC case is clearly distinguishable where and that's the only case I saw where fundamental fairness is applied. In that case, you have an individual who steps off the curb and gets hit by a car. He goes to the emergency department. He is treated by the emergency department physician where he tells him, I think I was trying to kill myself when I stepped off the curb. The emergency department physician then refers him directly to mental health treatment. He gets mental health treatment over a two or three day time period. And ultimately, there's an in camera inspection and the court releases those two or three days because again, if he's the one who stepped off the curb from the car that absolves the defendant. In this case, they haven't put forward any affirmative defenses of contributory negligence. They haven't put forward any affirmative defense of sole proximate cause. But again, I would reference the DC decision that says that even if they did, that doesn't carry the day. More importantly, it is not even remotely analogous to DC because what they're seeking is mental treatment in the months or years prior. It has no bearing on liability and whether or not they deviate from the standard of care. There's a passing reference that the nurses, that Donnie was trying to throw the nurses off by not telling them what medications they received. That's just true. In the trial court argument, I lay out the fact that Donnie basically said on Facebook, I want to hurt myself. A paramedic friend saw it on Facebook, went to the house. The paramedic talked to him, saw the medication, wrote it down on his paramedic run sheet. He took him to the emergency department. He wrote it down on the record. He gave that record to the emergency department nurse. It was transcribed into the record. It was also transcribed to emergency physician. They literally knew all five medications he took and the amounts. The passing reference by the appellees that this is relevant because somehow it goes to his state of mind and whether or not he was trying to hide the ball with the nurses, that's just not factually true. More importantly, that doesn't carry the day in establishing that I or my client affirmatively placed it at issue. If there's any other questions, I'll be willing to answer them at this time, but otherwise I'm going to cede my time. I don't see any other questions. Thank you, Mr. Gallagher. Mr. Drinkwine, you may proceed. Thank you and may it please the court and good morning again, counsel. Chris Drinkwine on behalf of Iowa Health Systems Methodist Medical Center and nurses Fitzgerald and Weiber. At the outset, I want to clarify that we're under section 10A2 of the act, not 10A1. Section 10A2 applies to records or communications disposed in a civil proceeding after the recipient's death. The therapist recipient privileges waived under section 10A2 where the recipient's mental condition has been introduced as an element of a claim. Plaintiff did just that when she specifically alleged the sedan's mental anguish and emotional distress as a component of the damages element of all eight survival survival claims. This court's opinion in Pfeiffer v. Ginger is controlling. In Pfeiffer, this court held that the plaintiff waived her therapist recipient privilege by affirmatively placing her own mental health condition at issue when she alleged that she suffered great pain and anguish both in mind and body. The mental anguish and emotional distress pled in this case is analytically indistinguishable from the great pain and anguish of the mind pled in Pfeiffer because both are allegations of psychological damage as a component of a claims damage element. A plaintiff has made an effort to distinguish Pfeiffer by pointing out that in addition to pleading that she suffered great pain and anguish both in mind and body, the plaintiff in Pfeiffer also provided discovery responses and presented deposition testimony and so forth which confirmed that she was claiming psychological damage. It's true that a party may introduce the recipient's mental condition in more than one way as the plaintiff in Pfeiffer did. The appellate court recently made that clear in the Doe v. Great America case and this is a concept that our Supreme Court explained back in Rita v. Advocate condition be introduced in more than one way in order to waive the therapist recipient privilege. Therefore plaintiff's effort to distinguish Pfeiffer is unavailing. Because the plaintiff fails at distinguishing Pfeiffer and has no meritorious response to baseless forfeiture arguments, she contends that defendants did not specifically argue before the circuit court that she waived the privilege by introducing decedent's mental condition as an element of her claims. Plaintiff argues that defendant forfeited the issue because defendants did not use the words mental condition as an element of her claim in their motion to compel and instead use the broader language mental health condition at issue. This argument is baseless because the phrase mental health condition at issue includes and encompasses introducing mental condition as an element of a claim. The case law uses the terms at issue and as an element of a claim. In Pfeiffer this court concluded that the section 10 exception to the privilege based on the introduction of mental health condition as an element was satisfying. In paragraph 31 of the Pfeiffer opinion this court wrote plaintiff placed her present and past mental health status at issue thereby waiving her privilege under the act. So this court has used the words mental health status at issue to describe the introduction of mental condition as an element of a claim. So the defendants did argue before the circuit court that plaintiff introduced the decedent's mental condition as an element by arguing that decedent's mental condition is at issue and did not forfeit the argument. But it's also important to recognize that plaintiff and the circuit court knew exactly what defendants were arguing in their motion to compel because plaintiff cited Rita in response to the motion to compel for the proposition that before the circuit court can order disclosure it must find the recipient has introduced his mental condition as an element of the claim. It's also important to recognize that even if there was a forfeiture this court can affirm the circuit court on any basis supported by the record and the record plainly demonstrates that the plaintiff introduced decedent's mental condition as a component of the damages element of the aid survival. Plaintiff also advances a forfeiture argument based on defendants purported failure to address her appellate contention that the circuit court never found that she introduced mental condition as an element of her claims. In its July 6, 2021 scratch order branding defendants motion to compel the circuit court found plaintiff's decedent's mental health at the time of the occurrence directly relates to issues of liability. Defendants submit that the phrase relates to issues of liability is similarly broad and encompasses the concept of introducing the recipient's mental condition as an element of a claim. So contrary and contrary to plaintiff's forfeiture argument defendants did address her appellate contention. Defendants argued that irrespective of any shortcoming in the language of the circuit court's order the appellate court may affirm the circuit court's judgment on any basis supported by the record. All this appellate court needs to do is read paragraph 38 in each of the eight of plaintiff's survival claims to see that plaintiff has introduced decedent's mental condition as a component of the damages element of those. Regarding the in-camera review the parties agree that section 10A2 of the act requires in-camera review of the mental health records to determine relevance probative value whether they're unduly prejudicial and so forth. The parties also agree that the circuit court did not conduct an in-camera review. So the order of the circuit court compelling is defective because it didn't do that? No your honor I don't think it's defective I think it's incomplete. The fact of the matter is the statute requires the in-camera review it wasn't done. Before compelling before compelling. Well there's no reason to scratch the part of the order compelling the plaintiff to sign the authorization to release the record because that was completely appropriate for all the reasons I've stated but and it needs to happen in order to produce the circuit court can review them. So our position is that this court should affirm the order of the circuit court requiring the authorization but obviously on remand they'll have to conduct the in-camera review. And as I was stating the there's a disagreement about why they why the circuit court didn't do that. It doesn't matter but during oral argument defendants did ask the circuit court to conduct an in-camera review. And it's unclear from the record whether the circuit court intended to conduct that review after the author authorization was signed and the records were produced. But in any event the circuit court must do the in-camera review on remand but for the reasons defendants have argued the circuit court's order compelling plaintiff to execute the record. With regard to the common law fundamental fairness exception our brief has more than two or three sentences on that. I think it's more like three or four paragraphs if memory serves. It's an alternative argument and this court does not need to address it unless it determines that the plaintiff could not introduce the decedent's mental condition as an element of her survival plan. And for the reasons I've set forth this morning the the mental condition is clearly alleged as a component of the damage element of the survival plan. So I don't think you need to reach the fundamental fairness exception but if you do the court should find that it applies. In the DC versus SA case the Supreme Court held that that this fundamental fairness exception was applicable because the protected information potentially contradicted the plaintiff's claim that defendant's negligence caused the accident and therefore it had the potential to absolve the defendant from any liability. The same is true in this case the decedent's mental records have the potential to demonstrate that the proximate cause of the decedent's death was his the negligence of the defendants in the ER. Therefore like the records in DC. Isn't that known without those mental health records? It's known that he committed suicide your honor. What's not known is the extent of the planning and the whether and how he planned to do it irreversibly. And there's records in the record there's I think it's in the record that this wasn't his first suicide. So the records there's a potential for them to be revealing this planned irreversible suicide attempt which like the records in DC pertains to his conduct at the time and potentially negates the causation element. Isn't this issue fairly straightforward? If his condition was known at the time he was in the hospital receiving treatment the issue is negligence regarding the treatment he received with a known condition. Negligence would be not proven if they can't make the causation out your honor. Obviously cause proximate cause is an element of negligence and our contention is that it's not our clients negligence that caused his death but rather his pre-planned irreversible suicide. So those records have the potential to reveal evidence of that. And then the negligence would be negated because they have to prove proximate cause. Now plaintiff complains that defendants have not established the semen's mental health records from the weeks, months, or years before the suicide would have any relevance to the individual defendant's conduct in the ER. Of course defendants cannot establish that the mental health records will negate causation because the records have not yet been produced. But it's important to note your honors that the Supreme Court in DC held that the fundamental fairness exception was applicable because the records potentially contradicted the plaintiff's claim that the defendant's negligence caused the accident. Not that the records established an alternative cause. It's also significant that the records that issue in the DC case were sought because the doctor treating the plaintiff in DC learned during that treatment that the plaintiff may have been attempting suicide. In this case we know the decedent was attempting suicide we just don't know how long defendant was planning it, if or how decedent planned an irreversible suicide. And this is why the mental health records have the potential to negate causation, an essential element of all of the negligence claims brought by the plaintiff in this case. Unless there's request that this court affirm the order of the circuit court compelling plaintiff to execute an authorization for the release of decedent's mental health records. Thank you. Thank you Mr. Drinkwine. Mr. Gallagher for rebuttal. Thank you. Regarding the waiver issue the allegation that plaintiff affirmatively put the mental health records or treatment in play was never made. The complaint was never referenced. If the complaint was referenced in the motion to compel or in reply or at argument from the trial court I could have done exactly what I did with Justice Holdridge and confirmed that we are not seeking any type of mental health damages. There's a reason why there's a requirement to bring these issues before the trial court so they can decide on a full and fair record. Regarding the subsection 10A1 it applies to this. I don't understand counsel's argument that it doesn't. Yes 10A2 talks about decedent's records but 10A1 is a specific carve out by the legislature. What they put in is that when a plaintiff alleges pain suffering physical pain mental suffering that then doesn't open up the door to mental health records because if it did as I referenced IPI series 31 unlawful death or survival they reference different mental characteristics grief and sorrow or mental suffering. So to apply the defendant's in tune with the wrongful death statute or survival statute we then open the door and that's not the law and the legislature made it clear through that 10A1 subsection carve out that it isn't. Again I want to talk about counsel's reference to proximate cause. DC I'm sorry strike that the Supreme Court's decision in DC stated quote defendant's argument that plaintiff introduced his mental condition by pleading the defendant's negligence approximately causes injuries did not open the door. It said relevancy and centrality are not decisive. Just because they are trying to put forward a theory of a case or approximate cause argument they haven't provided this court any cases where the courts have deemed the mental health privilege waived because the defendant has approximate cause argument. There is no case stating that and I believe the DC court's decision explicitly rebuts their argument that because they want to make approximate cause argument down the road all of a sudden the mental health records or mental health privileges waived and the records are allowed. To Justice Holdridge's point they knew he had a prior suicide attempt. They knew he was there for an overdose. They knew the medication that he had taken. They knew the amount of medication that he had taken. They had a two-hour window to monitor him properly and apply the applicable standard of care by monitoring his blood pressure, providing antigens or medication when that blood pressure dropped, timely call the code, timely implement the code, appropriately resuscitate him when he actually went into code and his heart stopped. They did none of those things. That's the claim. His mental health 12, 2, 3, 4, 5 years ago is wholly irrelevant and we in no way introduced it. If we were again to take their argument to its natural conclusion, if an individual had a mental health issue and they went to a hospital and there was negligence separate apart from their mental health condition, their mental health records would be open season. I have a question, Mr. Gallagher. Assume that the motion to compel is upheld. These records are delivered under seal, I presume, to the court for in camera review. Is that correct? That's not in the order. Well, then what's the purpose of an in camera? If the court says you have to produce these and it's not produced under seal to the court and then the court is supposed to have an in camera, what's the whole idea of in camera? These records are not disclosed to you. They're disclosed to opposing counsel. What's the purpose of in camera? The purpose is the way the act intended is that in order to actually release it, you have to go through all three steps. The opinion Sicily v. Rockford Memorial, which is site 296, 3D80 explicitly states, even if defendant had introduced her mental condition as a claim of defense, Rockford has presented no evidence to show the trial court made the numerous and explicit findings that 10A1 requires, namely, an in camera inspection and a weighing of the prohibitive or prejudicial value. As you pointed out, the order is deficient as written. There is no indication that there's an in camera inspection. It's going to meet me signing off the waiver, them then submitting the request for documents to these mental health treaters and then records being returnable to them. Once they're released, the question is, what is the scope and breadth of that release to whom and under what conditions? There is no indication there's an in camera inspection. Would that potentially happen? I can't speak to that. I'm assuming the judge would do that. I don't know that we've placed it in play. That's the initial. Are you aware of any where the mental health records are spread to counsel in a dispute before there's a quote in camera by the judge? You'd be surprised. Yes, there are a couple. I don't have them at the tip of my tongue. As I read through all these decisions, because I haven't argued in the federal court on this issue justice, and I looked at it and it happens. They'll literally just tender them over without any in camera inspection. That's part of the reason why the appellate court will reverse and remand. It's done. Thank you. Mr. Gallagher, your time is up. With that, we'd like to thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. With that, we will recess for panel change in the new case. Thank you.